IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAROL A. WILSON, *et al.* :
:
    Plaintiffs, : Case No. 2:16-cv-739
:
v. : JUDGE ALGENON L. MARBLEY
:
A&K ROCK DRILLING, INC., : Magistrate Judge Jolson
:
    Defendant. :

## OPINION & ORDER

This matter comes before the Court on a motion to dismiss from Defendant A&K Rock Drilling, Inc. ("A&K"). (Doc. 15). A&K argues that the plaintiffs' claims—which seek overdue fringe benefit fund payments on behalf of A&K's covered employees—are: (1) barred by Ohio's eight-year statute of limitations; and (2) partially foreclosed by the plain language of the relevant Collective Bargaining and Trust Agreements as well as federal labor law. After careful consideration of the parties' briefing and applicable law, the Court disagrees and, for the reasons set forth below, **DENIES** A&K's motion to dismiss.

### I. BACKGROUND[1]

The plaintiffs—the Trustees and Administrator of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Apprenticeship Fund, and the Ohio Operating Engineers Education and Safety Fund (the "Funds")—filed suit seeking delinquent employer contributions under the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 *et seq.*, and the Employee Retirement Security Income Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145.

---

[1] In adjudicating this motion to dismiss, the Court accepts as true all well-pleaded factual allegations from the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

1

A&K Rock Drilling, Inc. is an Ohio corporation, with its principal place of business located in Danville, Ohio. At all relevant times, A&K was engaged in the contracting industry. In March 2002, A&K executed the first of three "Acceptances of Agreement" with the Ohio Contractors Association and an Acceptance of Agreement with the Associated General Contractors of Ohio Labor Relations Division ("Collective Bargaining Agreements" or "CBAs"). Gregory Klodt acted on behalf of A&K in executing these Collective Bargaining Agreements. The CBAs, which incorporated by reference four Trust Agreements, obligated A&K to contribute to the Funds' fringe benefit funds for all hours worked by A&K's employees.

On November 6, 2015, the Funds conducted an audit and concluded that A&K had failed to make required contributions for hours worked by Gregory Klodt, D.T. Colopy, and A.F. Hooper between January 2004 and March 2008. The Funds sent a letter to A&K requesting $39,061.18 for unpaid fringe benefit contributions and $17,086.62 for interest charges, amounting to a total demand of $56,147.80.

The Funds then filed this suit in July 2016, seeking delinquent contributions, interest, liquidated damages, fees, and costs under ERISA § 515. *See* 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."). Last November, A&K filed a motion to dismiss all claims, arguing that they are barred under the relevant statute of limitations and fail to state a claim for which relief can be granted with respect to contributions on behalf of Gregory Klodt. (Doc. 15). The Funds timely filed a response in opposition (Doc. 17), to which A&K then replied. (Doc. 18). This matter is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

A&K moved to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "whether a cognizable claim has been pleaded." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). In making this determination, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (quotation omitted). If the allegations in a complaint "show that relief is barred by the applicable statute of limitations, [then] the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 920-21 (2007).

## III. ANALYSIS

A&K argues for dismissal on two grounds: (1) the Funds' claims are barred by Ohio's eight-year statute of limitations; and (2) even if the Funds' claims are not time barred, A&K is not liable for payments on behalf of Gregory Klodt because he is a company owner and employer representative, not a covered employee. The Court will address each argument in turn.

### A. The Funds' Claims Are Not Barred by the Statute of Limitations.

A&K first argues that this suit must be dismissed because all claims for delinquent contributions fall outside the applicable eight-year statute of limitations. The Court disagrees, however, because A&K ignores legislative pronouncements on whether to apply Ohio's former fifteen-year statute of limitations or Ohio's current eight-year statute of limitations. As explained, the longer limitation period applies to this action, thus saving the Funds' claims.

As the parties agree, ERISA does not provide a statute of limitations for delinquent contribution actions under Section 515. As such, courts must "apply the limitations period for the state cause of action that is most analogous to the ERISA claim at issue." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1054 (6th Cir. 2015). The Sixth Circuit holds that where there is a claim for delinquent contributions, courts must apply the "forum state's general limitations period for contract actions." *Id.* In Ohio, the *current* statute of limitations for breach of contract claims is eight years. Ohio Rev. Code § 2305.06; *cf. Wilson v. Bridge Overlay Sys.*, 129 F. Supp. 3d 560, 581 (S.D. Ohio 2015) (mentioning Ohio's eight-year statute of limitations in ERISA collection action).

Ordinarily, the statute begins running at the time of the first alleged breach of contract. In other words, the statute begins running when the company first fails to make a required contribution or payment under the relevant agreement. *See G&W Constr. Co.*, 783 F.3d at 1054 ("The Funds filed this action in February 2011 seeking unpaid contributions for the period 'from January 2007.' Because the suit was brought within the six-year statute of limitations for contract claims in Michigan, the defendants may not shorten the limitations period . . . ."); *Wilson*, 129 F. Supp. 3d at 581 (finding that where no fund contributions were ever made under the contract, the statute of limitations began running when the contract was executed).

In light of the foregoing, A&K argues that all claims are time barred because, as the Funds acknowledge, the delinquent payments began in January 2004, yet the Funds failed to file this suit until July 2016—well outside the eight-year limitations period. (Doc. 16, PageID 96 ("In the case *sub judice*, A&K is properly asserting that Plaintiffs' claims are time barred. . . . The initial Complaint was filed on July 28, 2016, 12 years and 6 months after the first alleged breach and 8 years and 4 months after the last alleged breach.")).

The Funds counter that Ohio's prior statute of limitations for breach of contract claims—which was fifteen years instead of eight—applies, thus saving their claims. The Funds also argue that, even if the newer eight-year limitation period applies, the federal "discovery rule" steps in to save their claims because the Funds did not discover the delinquent payments until the audit in 2015.

Before September 28, 2012, Ohio Rev. Code § 2305.06 "provided for a fifteen-year statute of limitation" for breach of contract claims. *United States v. Edwards*, No. 2:12-cv-1060, 2014 WL 3818565, at *6 (S.D. Ohio Aug. 4, 2014); *see also Potts v. Unglaciated Indus., Inc.*, No. 15 MO 0003, 2016-Ohio-8559, at ¶ 96 (Ohio Ct. App. Dec. 30, 2016). A 2012 amendment to the statute shortened the limitations period to eight years for breach of contract actions based on a written agreement. *Potts*, 2016-Ohio-8559, at ¶ 96; Sub. S.B. 224, § 1, 129th Gen. Assem. (Ohio 2012) ("S.B. 224"). In shortening the limitations period, the Ohio General Assembly specified as follows in an "uncodified" portion of S.B. 224:

> For causes of action that are governed by section 2305.06 of the Revised Code *and accrued prior to the effective date of this act*, the period of limitations shall be eight years from the effective date of this act or the expiration of the period of limitations in effect prior to the effective date of this act, whichever occurs first.

*Potts*, 2016-Ohio-8559, at ¶ 96 (emphasis added) (quoting S.B. 224, § 4, 129th Gen. Assem. (Ohio 2012)).

Under this framework, if the Funds' causes of action accrued when A&K first failed to make the required contributions in 2004 (i.e., if the causes accrued prior to the effective date of S.B. 224), then the previous fifteen-year limitation period applies, giving the Funds until 2019 to file suit. *Id.*; *see also Edwards*, 2014 WL 3818565, at *6 ("Thus, under the former version of § 2305.06, a fifteen-year limitations period applied to any claims that began to run from the last payments Edwards made to I.S.M.B.A. sometime in 1995).

5

A&K argues that the Funds' causes of action accrued in 2004 but appears to have overlooked the "uncodified law underlying the [2012] amendment to R.C. 23050.06" in filing its motion to dismiss. *See Potts*, 2016-Ohio-8559, at ¶ 96. In its Reply Brief, however, A&K argues that "[t]his Court is under no obligation to conform to the Ohio legislature's annotations as to the application of its amended law." (Doc. 18, PageID 281). But A&K cites no authority for the proposition that this Court can ignore the General Assembly's lawful yet uncodified enactment in S.B. 224 § 4. Not all portions of legislative acts get codified. That does not render those uncodified portions any less of a "law." Indeed, when confronted with similar questions— both the Southern District of Ohio and the Ohio Court of Appeals have looked to the uncodified portion of S.B. 224 in determining whether the fifteen-year or eight-year statute of limitations applies. *Edwards*, 2014 WL 3818565, at *6; *Potts*, 2016-Ohio-8559, at ¶ 96. So too, here.

A&K also points to this Court's decision in *Wilson v. Bridge Overlay Systems*, where the Court briefly mentioned Ohio's eight-year statute of limitations in an ERISA action based on a contract executed and breached in 2006. But *Wilson* offers no refuge either, because there, the Court was not required to determine whether Ohio's fifteen-year or eight-year statute of limitations actually applied. Instead, the Court had to determine only whether the defendant should prevail under a "laches" defense. *Wilson*, 129 F. Supp. 3d at 581. The Court noted both the prior and current limitations periods under § 2305.06 before concluding that the defendant's laches defense failed *no matter what* because "the alleged delay [in bringing suit] in this case is no more than eight years, which is within the statute of limitations." *Id.* In other words, it did not matter whether the longer or shorter limitations period applied, because the laches defense failed under both. *See id.* By relying exclusively on *Wilson* for support, A&K tries to squeeze blood from a turnip. No such luck.

In sum, under Section 4 of S.B. 224, this Court must apply the fifteen-year statute of limitations that previously existed in Ohio Rev. Code § 2305.06. Because the Funds' causes of action accrued in January 2004, the Funds had until January 2019 to file suit, and this action falls within the applicable limitations period. Accordingly, A&K's argument on this point fails, and the Court need not address the Funds' alternate counter-argument under the discovery rule.

**B. The Court Cannot Discern at the Motion-to-Dismiss Stage Whether Gregrory Klodt Was a Covered Employee for Contribution Purposes.**

A&K next argues that dismissal is warranted as to any claims for delinquent payments on behalf of Gregory Klodt. A&K contends that the CBAs and Trust Agreements did not require payments on Klodt's behalf because the agreements themselves (and federal labor law) distinguish between "employers" and "employees," and Klodt—as an owner and authorized representative of A&K—was not an "employee."

The Funds counter that A&K's argument misses the mark because the "employer" for contribution purposes is A&K itself—not Klodt (A&K's alleged owner). Instead, the Funds argue that, despite his status as an alleged owner of A&K, Klodt was still performing work for the company and, therefore, still qualifies as an "employee" for contribution purposes.

Collective Bargaining Agreements that establish ERISA plans "are interpreted by use of ordinary contract principles to the extent those principles are not inconsistent with federal labor policy." *Orrand v. Scassa Asphalt, Inc.*, 749 F.3d 556, 562 (6th Cir. 2015) (quotation omitted). Thus, the Court looks first to the CBAs and related Trust Agreements to determine whether Klodt was a covered employee. Where an agreement "is in writing and its terms are clear and unambiguous," the Court ascertains its meaning in accordance with the agreement's "plainly expressed intent." *Id.*

### 1. The Agreements Themselves Do Not Lend a Clear Answer.

The Collective Bargaining Agreements and Trust Agreements on which the Funds base their claims generally distinguish between an "employer" and its "employees." Article V, Section 35 of each CBA, which governs fringe benefit contributions, states that "[f]ringe benefit contributions shall be paid at the following rates for all hours paid to <u>*each employee*</u> by <u>*the Employer*</u> under this Agreement." (Doc. 16-1, PageID 106 (emphasis added)). And while the CBAs do not define the terms "employee" and "employer," the Trust Agreements, which are incorporated by reference, do include those definitions.

For example, Article I of the Ohio Operating Engineers Health and Welfare Plan Amended Agreement and Declaration of Trust defines an "employer" as "any person, corporation, partnership, unincorporated association, labor organization, or other legal entity *obligated by written agreement* to make contributions to the Fund established herein." (*Id.* at PageID 126 (emphasis added)). Conversely, that Trust Agreement defines an "employee" as "any person in the employ of an Employer on whose behalf the Employer is obligated by written agreement to make contributions to the Fund." (*Id.*). Article I of the Ohio Operating Engineers Pension Fund Amended Agreement and Declaration of Trust uses the same language in defining "employer" and "employee." (*Id.* at PageID 161). Article I, §§ 4, 5 of the Third Amended Agreement and Declaration of Trust Ohio Operating Engineers Apprenticeship Fund (*id.* at PageID 198-99), and Article I, §§ 2, 3 of the Amended Ohio Operating Engineers Education and Safety Fund Agreement and Declaration of Trust (*id.* at PageID 237), define "employer" and "employee" with slight variation, but both Trust Agreements still distinguish between the roles in like manner.

A&K argues that because "there is a clear distinction between the employer and the employee, with the employee being subservient to the employer," Klodt cannot be a covered employee. (Doc. 16, PageID 97). A&K looks to the "Acceptance[s] of Agreement" for each Trust Agreement in support. (*Id.* at PageID 98). In those Acceptances, Klodt is listed as the "Authorized Employer Representative." (Acceptances, Doc. 1-1, PageID 14-17). Under A&K's logic, Klodt could not be a covered "employee," because the Acceptances list him as an "Authorized Employer Representative" on the signature line.

This argument assumes too much, however, because the Trust Agreements do not define "Authorized Employer Representative," and, in any event, the Acceptances explicitly list A&K Rock Drilling as the "Name of Employer." (*Id.*). Thus, under this Court's understanding (and A&K's own resort to the Acceptances of Agreement), A&K may well be the employer, because A&K is a "corporation . . . obligated by written agreement to make contributions to the Fund established herein." (*See, e.g.*, Doc. 16-2, PageID 126). Similarly, Klodt may well be a covered employee, because he may well be "any person in the employ of an Employer on whose behalf the Employer is obligated by written agreement to make contributions to the Fund." (*Id.*). The definition of "employee" is somewhat circular, and without knowing who (or what) qualifies as "the Employer," the Court cannot ascertain whether Klodt was that employer's employee.

The Court declines to rule on this issue at the motion-to-dismiss stage. The Court simply notes that A&K has not met its burden in showing that it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Guzman*, 679 F.3d at 429. Further development of the record may shed more light on the meaning of the terms "employer" and "employee" as they appear in both the CBAs and the Trust Agreements. The parties will have the opportunity to develop that record during discovery.

## 2. Federal Labor Law Does Not Prohibit Payments on Klodt's Behalf.

A&K also argues that federal labor law prohibits the company from contributing to the Funds on Klodt's behalf. A&K cites Section 302 of the LMRA, which makes it unlawful for any "employer . . . or any person . . . who acts in the interest of an employer" to "pay, lend, or deliver . . . any money or other thing of value . . . to any [representative] labor organization." *See* 29 U.S.C. § 186(a)(2). As the Sixth Circuit explained, "[t]his statutory prohibition exists to prevent the misappropriation or dissipation of money that is owed to union employees." *Bd. of Trs. of Plumbers, Pipe Fitters & Mech. Equip. Serv., Local Union No. 392 Pension Fund v. B&B Mech. Servs., Inc.*, 813 F.3d 603, 608-09 (6th Cir. 2015) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 459 (6th Cir. 1989)).

A companion provision from Section 302 carves out an exception to this prohibition "with respect to money or other thing of value paid to a trust fund . . . *for the sole and exclusive benefit of the employees of such employer.*" *Id.* § 186(c)(5) (emphasis added). This exception "protect[s] fringe benefits" and applies when "employers . . . make contributions to trust funds established by employee representatives 'for the sole and exclusive benefit of the employees,' if 'the detailed basis on which such payments are to be made is specified in a written agreement with the employer.'" *B&B Mech. Servs.*, 813 F.3d at 609 (quoting 29 U.S.C. § 186(c)(5)(B)). Courts often refer to this exception as the "exclusive benefit rule." *See Kwatcher v. Mass. Serv. Emps. Pension Fund*, 879 F.2d 957, 961 (1st Cir. 1989) (explaining "section 302's exclusive benefit rule"), *abrogated by Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 11, 23 (2004).

Taken together, the prohibition on employer contributions from § 186(a)(2) and the "exclusive benefit rule" from § 186(c)(5) exist "to ensure that employer contributions are only for a proper purpose and to insure that the benefits from the established fund reach only the proper parties." *Moglia v. Geoghegan*, 403 F.2d 110, 116 (2d Cir. 1968); *see also, e.g.*, *Orrand*, 794 F.3d at 562 ("The general prohibition on contributing funds to employee representatives . . . seeks to prevent misappropriation and dissipation of monies that are owed to employees."); *Kwatcher*, 879 F.2d at 961 ("Like its congenator in ERISA, section 302's exclusive benefit rule was designed to insure that employer contributions are only for a proper purpose and . . . that the benefits from the established fund reach only the proper parties." (quotation omitted)). Any deviation from this "rigid structure . . . . could provide an unintended loophole for the unscrupulous, and could result in a diversion of funds away from the proper parties as had occurred before Section 302 was enacted." *Moglia*, 403 F.2d at 116.

With this framework in mind, A&K argues that 29 U.S.C. § 186(a) prohibited the company from making fringe benefit contributions on Klodt's behalf because he qualifies as an "employer" under the LMRA. The flip side of A&K's argument is that the company could not make contributions on Klodt's behalf under the exception from § 186(c)(5) because—as an A&K owner or designated representative—he could not also be considered an A&K "employee." (Doc. 16, PageID 98).

A&K cites two cases in support of its argument that benefit "payments on behalf of company owners [are] illegal." (*Id.*). Neither case necessarily resolves this matter, however, because "[c]ourts are divided on the question" of whether a company's benefit contributions on behalf of an owner or officer "would . . . violate the exclusive benefit rule of the LMRA." *Kwatcher*, 879 F.2d at 963 n.5 (comparing cases).

11

*First*, A&K points to *McHugh v. Teamsters Pension Trust Fund of Philadelphia*, where the defendant pension fund argued that it could not make benefit payments to the McHugh siblings, because "they constitute the management of the McHugh companies and should thus be classified as employers, who by the terms of [LMRA] § 302 cannot benefit from the Funds." 638 F. Supp. 1036, 1044 (E.D. Pa. 1986). Each of the five siblings owned an equal "20% interest" in the parent company. *Id.* at 1039. The district court held that, in light of the siblings' "status as shareholders, officers and directors of the companies, the breadth of their responsibilities and the relatively minor portion of their time and energy which they devoted to teamster work, the trustees could reasonably conclude that the [siblings] were not employees whose work was covered by a collective bargaining agreement." *Id.* at 1043-44. In other words, the court found that "[t]he McHughs' relationship to the companies . . . together with the trustees' legitimate concern about complying with the requirements of section 302 . . . provide[d] ample support" for not paying them fringe benefits under the relevant bargaining agreements. *Id.* at 1044 (quotation omitted) (finding plan decision not arbitrary and capricious).

*Second*, A&K points to *Chase v. Trustees of Western Conference of Teamsters Pension Trust Fund*, where the Ninth Circuit addressed a spate of owner-drivers of taxicabs who had contributed to a pension fund but were later determined to be ineligible to receive fund benefits. 753 F.2d 744, 746 (9th Cir. 1985). There, the drivers made contributions "on the assumption that [they were] employees when in fact they [were] independent contractors." *Id.* at 750. Under Ninth Circuit precedent, this assumption constituted "a mistake of law." *Id.* at 750-51. Because the drivers were independent contracts, and thus, could not be considered "employees" under the LMRA, the court ruled that all payments made on their behalf "were made under a mistake of law." *Id.* at 750-52 (citing 29 U.S.C. § 186(c)(5)).

The Funds counter that A&K's argument is misplaced because Section 302 distinguishes only between employers and employees, but does not distinguish between different *types* of employees, like officers and supervisors versus construction workers. The Funds look to *Blassie v. Kroger Co.*, 345 F.2d 58, 73 (8th Cir. 1965), for support. In *Blassie*, the Eighth Circuit noted that "[a]n officer of a union is an employee of that union *just as the president of a corporation is [one of] its employees.*" *Id.* (emphasis added). The court continued by explaining that such an individual "is no less an employee for the purposes of a jointly administered fund under [29 U.S.C. § 186(c)(5)] because he may also possess managerial capacity." *Id.* Instead, the court explained, the statute "draws no distinction among employees." *Id.*

The Funds also cite *O'Hare v. General Marine Transport Corp.* in support of their argument that just because an individual serves as a supervisor does not preclude him or her being an "employee" under LMRA § 302. 564 F. Supp. 1064, 1069 (S.D.N.Y. 1983), *aff'd*, 740 F.2d 160 (2d Cir. 1984). In *O'Hare*, the employer argued that it could not make contributions for sea captains because they count as "supervisors" under the National Labor Relations Act ("NLRA") Section 2(11) and, therefore, contributions on their behalf would violate LMRA § 302. *Id.* The court listed a series of cross-referenced definitions of "employee" from the LMRA and the NLRA before rejecting "such a literalistic and automatic application of the NLRA definitional provisions to the various provisions of the LMRA." *Id.* at 700 (collecting cases). The court then heldd that the "supervisor exclusion" of the NLRA is inapplicable to the LMRA and instead was intended to apply only to certain provisions of the NLRA itself. *Id.* (citations omitted). Based on that understanding, the court concluded "that the payments due include contributions for the captains." *Id.* In other words, merely serving as a supervisor does not absolve one's employer from making fund contributions.

13

The Funds make a more compelling *legal* argument. In addition to the cases the Funds cited above, the Court must acknowledge that the Southern District of Ohio has twice required fringe benefit contributions on behalf of the owners of signatory employers where the very same Funds at issue here sought recovery. *See Orrand v. Scassa Asphalt, Inc.*, No. 2:12-cv-1131, 2014 WL 4272722, at *1 (S.D. Ohio Aug. 29, 2014) (requiring delinquent fund contributions on behalf of *all* the company's employees, including its owner and president, Nick Scassa), *aff'd* 794 F.3d 556 (6th Cir. 2015); *Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs*, No. 2:13-cv-357, 2013 WL 3147956, at *7 (S.D. Ohio June 19, 2013) (Marbley, J.) (requiring delinquent contributions for *all* of the company's employees—including its owner, Kevin W. Bunn—for all hours worked), *aff'd* 606 F. App'x 798 (6th Cir. 2015). On both occasions, the Sixth Circuit affirmed. Although neither company raised a defense under 29 U.S.C. § 168(a), the Court finds it unlikely that two judges of this district and two panels of the Sixth Circuit would require either company to violate federal labor law in the process of adjudicating a delinquent contribution dispute under ERISA and the LMRA. Accordingly, even if Klodt truly served as A&K's owner or corporate representative, as the company alleges, he still could qualify as an employee for fringe benefit contribution purposes if, as the *Funds* allege, he performed some work on A&K's behalf. Dismissal, therefore, is inappropriate.

A&K's argument under the definitions of "employer" and "employee" in ERISA fares no better. *See* 29 U.S.C. §§ 1002(5), 1002(6). In 2004, the Supreme Court held that an owner-employer can be both an "employer" and an "employee" within the meaning of ERISA. *Yates Profit Sharing Plan*, 541 U.S. at 16 ("Under ERISA, a working owner may have dual status, *i.e.*, he can be an employee entitled to participate in a plan and, at the same time, the employer (or owner or member of the employer) who established the plan.").

At bottom, and construing the complaint in the light most favorable to the Funds, it does not appear "beyond doubt that [they] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *See Directv, Inc.*, 487 F.3d at 476 (quotation omitted). As such, the Court cannot grant A&K's motion to dismiss under Rule 12(b)(6) with respect to the company's liability for delinquent payments on Klodt's behalf.

## IV.  CONCLUSION

For these reasons, the Court **DENIES** A&K's motion to dismiss (Doc. 15) and will allow the case to proceed to summary judgment.

**IT IS SO ORDERED.**

                                                  s/Algenon L. Marbley
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**DATED:  June 5, 2017**