# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CAROL A. Wilson, *et al.*, : | |
| : | Case No. 2:16-cv-739 |
| Plaintiffs, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Jolson |
| A&K ROCK DRILLING, INC., : | |
| : | |
| Defendant. : | |

## **OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment (ECF No. 23) of Plaintiffs Carol A. Wilson and the Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Education and Training Fund, and the Ohio Operating Engineers Apprenticeship Fund (the "Funds"), and the Motion for Summary Judgment (ECF No. 26) of Defendant A&K Rock Drilling, Inc. ("A&K"). For the following reasons, the Court **GRANTS** the Funds' Motion and **DENIES** A&K's Motion.

## I. BACKGROUND

### A. Factual Background

The parties do not dispute the underlying facts, which can be summarized as follows. The Funds are jointly administered, multiemployer fringe benefit programs established for the benefit of employees of contractors who perform work pursuant to collective bargaining agreements with the Union. (ECF No. 23). A&K was a corporation engaged in the contracting industry. (ECF Nos. 13 at ¶¶ 2, 26 at 2). A&K was privately held by Mr. Edward Atherton and Mr. Gregory Klodt. (ECF No. 26-2.).

1

In March 2002, A&K executed the first of three "Acceptance of Agreement" with the Ohio Contractors Association and an Acceptance of Agreement with the Associated General Contractors of Ohio Labor Relations Division ("Collective Bargaining Agreements" or "CBAs"). (ECF Nos. 13 at ¶ 5, 23-1). Gregory Klodt acted on behalf of A&K in executing these Collective Bargaining Agreements. (ECF No. 26-3). The CBAs, which incorporated by reference four Trust Agreements[1], obligated A&K to contribute to the Funds' fringe benefit funds for all hours worked by A&K employees. Specifically, the CBAs provide:

> Fringe benefit contributions shall be paid at the following rates for all hours paid to each employee by the Employer under this Agreement which shall in no way be considered or used in the determination of overtime pay. Hours paid shall include holidays and reporting hours which are paid.

Ohio Highway Agreement at ¶ 35 (ECF No. 23-1 at PageID 333); Ohio Building Agreement at ¶ 45 (ECF No. 23-1 at PageID 381).

The Funds conducted an audit of A&K's payroll records in November 2015 for the period of January 1, 2004 to November 1, 2015 and concluded that were a number of hours worked during the audit period for which contributions had not been made. (ECF No. 15 at 6). These included hours on behalf of Klodt and D.T. Colopy for time worked between January 2004 and March 2008. (ECF No. 26 at 4). The Funds sent a letter to A&K requesting the unpaid fringe benefits and interest, for a total demand of $56,147.80. (ECF No. 26-3).

---

[1] The four Trust Agreements incorporated by reference into the CBAs are (1) Ohio Operating Engineers Health and Welfare Plan Amended Agreement and Declaration of Trust ("Health and Welfare Trust"); (2) Ohio Operating Engineers Pension Fund Amended Agreement and Declaration of Trust ("Pension Trust"); (3) Third Amended Agreement and Declaration of Trust Ohio Operating Engineers Apprenticeship Fund ("Apprenticeship Trust"); and (4) Amended Ohio Operating Engineers Education and Safety Fund Agreement and Declaration of Trust ("Education and Safety Trust"). *See* ECF No. 26-3 at PageID 729-941.

## B. Procedural Background

The Funds initiated this suit in July 2016, seeking delinquent fringe benefit contributions, interest, liquidated damages, and costs under the CBAs, the Employee Retirement Security Income Act of 1974 ("ERISA"), and the Labor Management Relations Act of 1947 ("LMRA"). (ECF No. 1). In November of 2016, A&K filed a Motion to Dismiss, arguing that the claims are barred by the relevant statute of limitations and fail to state a claim for which relief can be granted with respect to the contributions on behalf of Gregory Klodt. (Doc. 15). First, A&K argued that Ohio's current eight-year statute of limitations for contracts actions applied, barring all claims since the delinquent payments began in January 2004. (*Id.*). Second, A&K argued that it was not obligated to make contributions on Klodt's behalf because—as an owner and authorized representative of A&K—Klodt was an employer, not an employee. As part of its argument, A&K alleged that federal labor laws prohibit the company from contributing to the Funds on Klodt's behalf because he qualifies as an employer under the LMRA.

In June of 2017, this Court denied the Motion to Dismiss. (ECF No. 31). The Court rejected A&K's statute of limitations argument and held that Ohio's previous fifteen-year statute of limitations for contract actions governs, since the claims accrued prior to the amendment that changed the applicable statute of limitations to eight years. Thus, on the first issue, this Court held that the claims were not time-barred. (ECF No. 31). On the second issue relating to contributions on behalf of Klodt, the Court held that it could not determine at the motion to dismiss stage whether Klodt was an "employer" or an "employee" under the CBAs. The Court did, however, reject A&K's argument that it would be illegal for A&K to contribute money on Klodt's behalf. (ECF No. 31).

In April of 2017 and May of 2017, the Funds and A&K, respectively, moved for Summary Judgment under Federal Rule of Civil Procedure 56(a). Both motions were filed

3

before this Court ruled on the Motion to Dismiss in June of 2017. The Funds seek summary judgment against A&K in the amount of $39,061.18 for delinquent contributions, $81,024.48 for accumulated interest calculated through April 15, 2017, plus late charges of $19.27 per day thereafter and statutory interest in the amount of $81,024.48 calculated through April 15, 2017, plus late charges of $19.27 per day thereafter. (ECF No. 23). A&K seeks summary judgment in its favor arguing first that the claims fall outside the statute of limitations, and second, that no contributions are owed on Klodt's behalf. (ECF No. 26). The motions are fully briefed and ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting

4

*Anderson,* 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

### III. ANALYSIS

Given this Court's decision at the motion to dismiss stage that the claims are not time barred, the only remaining issue is whether A&K owes contributions on Klodt's behalf. Indeed, A&K does not argue that it does not owe contributions on behalf of D.T. Colopy. Thus, summary judgment in Plaintiffs favor is **GRANTED** as to contributions on Colopy's behalf.

The Funds argue that A&K was bound by the applicable CBAs to make fringe benefit contributions on behalf of its employees for all hours worked, and Klodt was an employee because he was in the employ of A&K—the employer under the CBAs—and was listed as an employee on wage reports submitted to the State of Ohio. A&K, on the other hand, makes two arguments. First, A&K argues that funds are not owed on Klodt's behalf under the CBAs. Second, A&K argues that contributing to the fringe benefits fund on behalf of Klodt violates the LMRA. This Court rejected the second argument in its order on the motion to dismiss, so the Court need only decide whether the CBAs require contributions on Klodt's behalf.

#### A. Applicable Law

Collective-bargaining agreements that create pension or welfare benefits plans are subject to rules established in ERISA. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933, 190 L. Ed. 2d 809 (2015). ERISA requires parties to enter into written agreements governing the creation and management of multi-employer fringe benefit funds. *Orrand v. Scassa Asphalt,*

5

*Inc.*, 794 F.3d 556, 561 (6th Cir. 2015). The written agreements must specify the basis on which payments are made to and from the fringe benefit fund, and the Fund administrator is obligated to act in accordance with the written agreements, so long as they are consistent with ERISA. *Id.* The requirement that fringe benefit fund agreements be in writing is further reinforced by the LMRA, which bars an employer from contributing to benefit trusts designated by employer representatives unless the payments are made in accordance with a written agreement. *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1051 (6th Cir. 2015). The requirement of having written agreements lends certainty and predictability to employee benefit plans, which serves the interest of both employers and employees. *Id.*

In a collection action brought by plan trustees to collect delinquent fringe benefit contributions from employers under such written agreements, § 515 of ERISA comes into play. Section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C.A. § 1145. This section was enacted to "simplify delinquency collections brought by plan trustees" and it "protects and streamlines the process for collecting delinquent contributions to ERISA plans from employers by limiting unrelated and extraneous defenses." *Wilson v. Bridge Overlay Sys., Inc.*, 129 F. Supp. 3d 560, 568 (S.D. Ohio 2015).

Pursuant to § 515 and the policies underlying the rule, the Sixth Circuit has held that ERISA funds are accorded special status. *Id.* The funds are entitled to enforce the written contracts without regard to the understandings of the original parties or common-law contract defenses. *Id.* Thus, employers' defenses to collection actions are extremely limited and the Sixth Circuit has only permitted a few defenses to a collection action. *Id.* at 568-69. Indeed,

"the Sixth Circuit has consistently found that employers' written promises to pay contributions to a multiemployer plan are enforceable if they are not inconsistent with law." *Id.* at 568.

Ordinary contract principles govern the interpretation of the CBAs that establish ERISA plans to the extent those principles are not inconsistent with federal labor policy. *G & W Const. Co.*, 783 F.3d at 1051; *see also Orrand v. Scassa Asphalt, Inc.*, No. 2:12-CV-1131, 2014 WL 4272722, at *3–4 (S.D. Ohio Aug. 29, 2014), *aff'd*, 794 F.3d 556 (6th Cir. 2015) ("When interpreting ERISA plans, federal courts apply 'general rules' of contract law as part of the federal common law."). If the words of a written contract are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933, 190 L. Ed. 2d 809 (2015). Whether a contract's terms are unambiguous is a question of law for the court to determine. *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1025 (6th Cir. 2001). Tellingly, [b]ecause multiemployer plans are entitled to rely on the literal terms of written commitments between the plan, the employer, and the union, the actual intent of and understandings between the contracting parties are immaterial." *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 562 (6th Cir. 2015).

## B. A&K is Obligated to Make Contributions to the Funds on Behalf of Klodt.

A&K makes two arguments as to why the CBA does not require contributions on Klodt's behalf. First, A&K argues that Klodt was an employer, not an employee, and the CBAs require only that contributions be made on behalf of employees. *See* ECF No. 26-2 ("Fringe benefit contributions shall be paid at the following rates for all hours paid to each *employee*") (emphasis added). A&K contends that Klodt was one of two equal shareholders of A&K and he acted as an employer representative and business manager. (ECF No. 26-2 at ¶¶ 1-2). In support of that argument, A&K notes that Klodt was the "Authorized Employer Representative" that signed the

7

CBAs on A&K's behalf. (ECF No. 26-3). The Funds counter that the CBAs state the "Name of Employer" as "A&K Rock Drilling." (ECF No. 1-2). The Funds further argue that Klodt is listed as an "employee" of A&K, the "employer," on wage reports submitted to the State of Ohio. (ECF 29-1 at Ex. 1).

Second, A&K argues that Klodt's work was exclusively managerial and he did not perform work under the Agreement. *See* ECF No. 26-2 ("Fringe benefits contributions shall be paid at the following rates for all hours paid to each employee by the Employer *under this Agreement*") (emphasis added). The "scope of work" under the CBAs define "work" as:

> Highway Construction, Airport Construction, Heavy Construction, Railroad Construction, Sewer, Waterworks and Utility Construction, Hazardous Waste Site Remediation, Industrial and Building Site, Power Plaint, Amusement Park, Athletic Stadium Site and Pollution Control, Sewage Plant, Waste Plant and Water Treatment Facilities Construction . . . .

(ECF No. 26-2 at PageID 447, 498, 597). A&K argues that because the CBAs do not include management of a business in the definition of work, and Klodt never performed any of the work outlined in the scope of work, Klodt never performed work compensable under the CBAs and A&K was therefore not obligated to make contributions for hours worked by Klodt. (ECF No. 26-1 at 9-10). The Funds contend that this Court has held, under identical language, that an employer is required to make contributions for "all hours paid" to an employee. (ECF No. 29 at 7). The Fund further argues that A&K has a duty to maintain adequate records and cannot now contend that its records are insufficient for the Fund to determine whether Klodt performed compensable work. (*Id.* at 9-12).

This Court need not reach the issue of whether adequate records were kept because the law unambiguously holds that an employer must make contributions to fringe benefit funds for *all* hours worked by an employee, regardless of whether the hours were "covered" under the CBAs. *See Bunn Enterprises, Inc.*, 606 F. App'x 798, 802 (6th Cir. 2015) (finding that " the

8

CBA unambiguously requires employer signatories to contribute the appropriate benefits contributions for all hours worked by their employees, regardless of whether those hours are covered under the contract"); *Wilson v. Bridge Overlay Sys., Inc.*, 129 F. Supp. 3d 560, 568 (S.D. Ohio 2015) (holding employer was required to make contribution on behalf of employee for all hours he worked, including hours worked on a machine that was not listed in the CBA); *Noe v. R.D. Jones, Excavating, Inc.*, 787 F. Supp. 759, 764–65 (S.D. Ohio 1992) (rejecting employer's argument that it need not contribute funds for hours spent on supervisory assignments which were not included in the agreements and holding that employer was "obligated to contribute to the Fringe Benefit Funds based upon all the hours worked by the employees, no matter the totality of their assignments"); *Orrand v. Shope*, No. C2-00-1161, 2001 WL 1763437, at *3 (S.D. Ohio Jan. 30, 2001) (granting summary judgment in favor of fund and rejecting employer's argument that it did not owe contributions on behalf of owner's step-brother who did not always work as operating engineer and sometimes got paid for hours he did not work at all). It is irrelevant, then, whether Klodt performed any of the work outlined in the scope of work or whether he performed exclusively managerial functions outside the scope of the CBA, as A&K contends.

In addition to arguing that he only performed managerial work, at oral argument, A&K argued that there is no evidence in the record of what kind of work Klodt performed on a day-to-day basis. *See* Transcript from 1/12/18 Hearing ("Transcript"). A&K therefore contends that summary judgment is not appropriate. As established, however, the nature of the work does not matter—no factual evidence regarding the type of work performed by Klodt will change the outcome of whether Klodt is an "employee" under the agreements. Thus, the issue is

appropriately resolved on summary judgment. If Klodt is an "employee" under the CBAs, A&K owes contributions for all hours worked.

The CBAs do not define the terms "employee" or "employer," but the Trust Agreements, which are incorporated by reference, do. Two of the Trust Agreements—the Health and Welfare Trust and the Pension Trust—define "employer" as "any person, corporation, partnership, unincorporated association, labor organization, or other legal entity obligated by written agreement to make contributions to the Fund established herein." ECF No. 29-3 at PageID 769, 803). The Apprenticeship Trust similarly defines "employer," as an entity bound by the CBA, and the Education and Safety Trust also defines "employer" in reference to the signatory to the Union contract. (*Id.* at PageID 867, 909).

Under the plain language of the Trusts incorporated into the CBAs, the "employer" is the entity bound by written agreement to contribute to the fringe benefit funds. The common thread in the definitions of employer in each of the Trust Agreements is that the employer is bound by the written agreement. Here, each of the Acceptance of Agreement lists the "Name of Employer" as "A&K rock drilling" [sic] or "A&K Rock Drilling Inc.". (ECF No. 1-1). Thus, A&K is the entity that is bound by the written agreements. Indeed, A&K does not dispute that it is an "employer" under the relevant definitions. (ECF No. 32 at 3). Instead, it argues that Klodt is an additional employer. *See id.*

A&K points to the fact that Klodt is the Authorized Employer Representative that signed the agreements. That alone, however, is not enough to show that he is an employer. Indeed, a corporation is a legal fiction. It cannot sign any documents. Thus, every corporate entity needs an employer representative to sign CBAs and other documents on its behalf. The Court is not willing to hold that every individual who signs a CBA on its employer's behalf is an employer

"obligated" under the CBA. If that were the case, the individual signatory would be personally obligated to make contributions to the fringe benefit funds as set forth in the agreements.

In cases discussing whether individual owners are personally liable under Section 515 of ERISA, courts have held that officers and shareholders are generally not liable unless the "individual explicitly joined the collective bargaining agreement in her individual capacity" or "plaintiff demonstrates that the corporation is an alter ego of the individual defendant [or] that traditional veil-piercing theories apply." *Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.*, 618 F. App'x 246, 257 (6th Cir. 2015); *see also Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 25 (1st Cir. 1988) (finding owner of corporate employer not liable under § 515 because even if he was an "employer" he was not an "employer obligated to make contributions to an employee welfare plan"); *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188–89 (2d Cir. 2015) ("Here, because Moulton never entered into a collective bargaining agreement with the union, and because no other evidence suggested that the individual and corporate defendants are alter egos, Moulton could not have been found to be an "employer" under Section 515 of ERISA.").

Though these cases are in a somewhat different context, the Court finds the reasoning persuasive. Just as § 515 limits liability to an "employer *obligated* to make contributions to an employee welfare plan," the relevant definitions of "employer" in the Trusts confine the definition of "employer" to entities obligated by written agreement to contribute to the funds. Neither party presented any evidence that Klodt is personally obligated to contribute to the

funds. Indeed, nowhere in the agreements does Klodt consent to be bound by the terms individually. Thus, the Court finds that Klodt is not an "employer" under the CBAs.[2]

The only remaining question is whether Klodt, who is not an employer, is an "employee" under the CBAs. The Health and Welfare Trust and the Pension Trust both define "employee" simply as "any person in the employ of the Employer on whose behalf the Employer is obligated by written agreement to make contributions to the Plan." (ECF No. 29-3 at PageID 769, 803). Thus, the first question is whether Klodt is "in the employ" of A&K, and the second question is whether A&K is obligated by written agreement to make contributions to the Plan on Klodt's behalf. Klodt is in the employ of A&K because he performed work—even if managerial—for the company and was compensated accordingly. *See* ECF No. 29-1 (wage reports listing "Klodt, G." as an "employee" of A&K and showing total gross wages paid by the company per quarter). A&K was obligated to make contributions to the Plan on Klodt's behalf, because, as discussed above, the CBAs require A&K to contribute for "all hours paid to each employee" regardless of the type of work the employee performed. Thus, Klodt is an "employee" under the Health and Welfare Trust and Pension Trust.

The Apprenticeship Trust, however, limits the definition of "employee" to "members of a Collective Bargaining Unit represented by the Union who are eligible to participate in and receive the benefits of the Apprenticeship Plan and Trust." (ECF No. 29-3 at PageID 687). Thus, in order to find that Klodt is an "employee" under the Apprenticeship Trust, it is necessary to find that: (1) Klodt is a member of the Collective Bargaining Unit represented by the Union;

---

[2] A&K point the Court to definitions of "employer" in federal labor statutes such as the NLRA, the LMRA, and ERISA. (ECF No. 32 at 3). Given that the Court determines the term "employer" as used in the written agreements between the parties is unambiguous, it need not look to evidence outside the CBAs. *See M & G Polymers USA*, 135 S. Ct. at 933 (if the words of a written contract are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.).

and (2) Klodt is eligible to receive benefits under the Plan. The Funds submitted evidence, in the form of an affidavit from the Assistant Administrator for the Trustees, that Klodt was "a member of Local 18 of the International Union of Operating Engineers" and that he became a Union member in 1996 and remained so throughout the audit period. (ECF No. 29-1 at ¶ 6). A&K does not offer any evidence contesting the fact that Klodt was a Union member, though it does argue that he was delinquent on his union dues. The Funds' affidavit acknowledges that fact but states that suspension because of nonpayment of dues does not affect whether contributions are due to the funds. (ECF No. 29-1 at ¶ 6). As the Funds explained during oral argument, union dues are submitted in tandem with benefit contributions, so if benefit contributions were not being made, the dues would not be paid either. *See* Transcript. Presumably, then, no dues were paid on Colopy's behalf either, but A&K does not dispute that it owes contributions on his behalf. Thus, the Court is satisfied that Klodt meets the first part of the definition of employee.

Additionally, the affidavit states that Klodt had been eligible for benefits under the Fund agreements in the past. (*Id.* at ¶ 7). The only argument A&K makes in support of its position that Klodt was not eligible to receive benefits (other than the rejected argument that he is an "employer" so the contractual terms do not apply to him) is that, as an employer, he was prohibited from doing so under the LMRA. (ECF No. 26-1 at 11-12). In its Order on the Motion to Dismiss, however, this Court rejected A&K's arguments that federal labor law prohibits Klodt from making payments on his behalf. (ECF No. 31). Thus, Klodt was eligible to receive benefits under the CBAs and therefore an "employee" under the Apprenticeship Trust.

Finally, Klodt also qualifies as an "employee" under the remaining Trust. The Education and Safety Trust defines "employee" as "to the extent permitted by law, all employees who are embraced within the scope of the Collective Bargaining Agreements herein referred to and now

13

hereinafter in effect between the respective Employer and the Union." (ECF No. 29-3 at PageID 909). As discussed above, there is no legal bar to Klodt being included in the scope of the CBAs and he therefore is an "employee" under the Education and Safety Trust as well. Thus, Klodt is an employee under each of operative agreements.

At the hearing, A&K made an additional argument that Klodt was not an employee because the common-law definition of employee involves multi-factor tests, with the fundamental inquiry focusing on whether an employer has an ability to control the individual—which, it argues, A&K cannot do, since Klodt controls himself. Here, the Court need not look to the common law definition of employee or employer because the definitions under the controlling contracts are unambiguous. Thus, the Court finds that Klodt is an employee and A&K owes contributions on his behalf. The Court's conclusion that A&K owes contributions on behalf of Klodt is further reinforced by the fact that the Southern District of Ohio has previously required employers to contribute to fringe benefits on behalf of owners. *See Orrand v. Scassa Asphalt, Inc.*, No. 2:12-cv-1131, 2014 WL 4272722, at *1 (S.D. Ohio Aug. 29, 2014) (requiring delinquent fund contributions on behalf of *all* the company's employees, including its owner and president, Nick Scassa), *aff'd* 794 F.3d 556 (6th Cir. 2015); *Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs*, No. 2:13-cv-357, 2013 WL 3147956, at *7 (S.D. Ohio June 19, 2013) (Marbley, J.) (requiring delinquent contributions for *all* of the company's employees—including its owner, Kevin W. Bunn—for all hours worked), *aff'd* 606 F. App'x 798 (6th Cir. 2015). On both occasions, the Sixth Circuit affirmed.

### C. The Funds are Entitled to Delinquent Fringe Benefit Contributions, Interest, and Liquidated Damages.

29 U.S.C. § 1132(g) provides that when funds prevail in Section 515 actions, the court must award:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the great of –

    (i)    interest on the unpaid contributions, or

    (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorneys' fees and costs of the action, to be paid by the Defendants, and

(E) such other legal or equitable relief as the court deems proper.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of the Internal Revenue Code of 1986.

29 U.S.C. § 1132(g). Under this section, the Funds seek unpaid contributions in the amount of $39,061.18; accumulated interest on this amount in the amount of $81,024.48 through April 15, 2017, plus late charges of $19.27 per day thereafter; and an additional $81,024.48 through April 15, 2017 plus late charges of $19.27 per day thereafter, which represents the liquidated damages award.[3] A&K does not dispute the amount of the statutory award, just that the award is owed in the first place. Thus, judgment is granted in the amount of $201,110.14 plus $38.54 a day from April 15, 2017 until the date the judgment is paid.

---

[3] The Funds require all employers to pay late charges, or liquidated damages, for their delinquent contributions at a rate of 18% per year. Wilson Aff. ¶ 4. Because the Funds also charge an 18% interest rate, the statutory award under § 29 U.S.C. 1132(g)(C)(i) and (ii) is the same.

## IV. CONCLUSION

For these reasons, the Funds' Motion for Summary Judgment (ECF No. 23) is **GRANTED**. A&K's Motion for Summary Judgment (ECF No. 26) is **DENIED**. Judgment is awarded in the Funds' favor in the amount of $201,110.14, plus $38.54 a day from April 15, 2017 until the date the judgment is paid. This case is **DISMISSED**.

**IT IS SO ORDERED.**

                                                    s/Algenon L. Marbley
                                            **ALGENON L. MARBLEY**
                                            **UNITED STATES DISTRICT JUDGE**

**DATED: January 24, 2018**